UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DAVID HOWARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:20-cv-01734-JPH-DML |
| ) | |
| MICHELLE BILLITER, ) | |
| JOHNATHAN JACKSON, ) | |
| TIM DINKINS, ) | |
| CURTIS BYNUM, ) | |
| JASON ERNEST, ) | |
| ) | |
| Defendants. ) | |

**ENTRY GRANTING MOTION FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF FINAL JUDGMENT**

**I. Background**

Plaintiff David Howard, an inmate confined at the Pendleton Correctional Facility ("Pendleton"), filed this civil rights action on June 25, 2020. Dkt. 2. Mr. Howard claims that he was denied access to the courts by defendants Officer Billiter, Sgt. Jackson, Sgt. Dinkins, Lt. Bynum, and Lt. Ernest, in violation of the First Amendment. Dkt. 8.

Mr. Howard alleges that on August 20, 2018, the defendants confiscated hundreds of his legal documents when he returned to Pendleton from a Marion County court. The documents consisted of legal materials and evidence he obtained for his *pro se* criminal defense. This caused him to go to trial unprepared and without evidence. He alleges that as a result he was found guilty.

The defendants moved for summary judgment on the basis that Mr. Howard failed to exhaust his available administrative remedies before filing this action. Dkt. 20. The motion is now fully briefed and ready for resolution. For the reasons explained in this Entry, the defendants' motion for summary judgment must be **granted.**

## II. Legal Standards

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those that might affect the outcome of the suit under applicable substantive law." *Dawson v. Brown,* 803 F.3d 829, 833 (7th Cir. 2015) (internal quotation omitted). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page,* 906 F.3d 606, 609-10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). The Court views the facts in the light most favorable to the non-moving party and all reasonable inferences are drawn in the non-movant's favor. *See Barbera v. Pearson Educ., Inc.,* 906 F.3d 621, 628 (7th Cir. 2018).

The substantive law applicable to the motions for summary judgment is the Prison Litigation Reform Act ("'PLRA'"), which requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997e(a); *see Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532 (citation omitted).

"State law establishes the administrative remedies that a state prisoner must exhaust for purposes of the PLRA." *Lanaghan v. Koch,* 902 F.3d 683, 687 (7th Cir. 2018). "Because exhaustion is an affirmative defense, the defendants must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it." *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015); *see also Kaba v. Stepp*, 458 F.3d 678, 681 (7th Cir. 2006).

### III. Discussion

#### A. Undisputed Facts

At the time of the alleged incident, Pendleton had a grievance process pursuant to Indiana Department of Correction ("IDOC") policy. Dkt. 20-1, ¶ 5. The IDOC recognizes only one grievance process. *Id.*, ¶ 9. The procedure in place at the time of the incident is entitled Offender Grievance Process, Policy and Procedure 00-02-301 ("Offender Grievance Process "). *Id*, ¶ 8; dkt. 20-2.

The Offender Grievance Process requires offenders to exhaust three steps prior to filing a lawsuit. Dkt. 20-1, ¶ 11. To fully exhaust, an offender must complete the following steps: (1) A formal attempt to solve a problem following unsuccessful attempts to informally resolve the problem; (2) a written appeal to the Warden/designee; and (3) a written appeal of the Warden's response to the Department Grievance Manager. *Id.,* ¶ 10; dkt. 20-2 at 3. Exhaustion of the grievance process requires an offender to timely complete all three steps. Dkt. 20-1, ¶ 11.

Offenders are made aware of the Offender Grievance Process during orientation and have continual access to the policy in the law library. *Id.*, ¶¶ 18-20. Through the Offender Grievance Process, offenders may grieve the "actions of individual staff" or "any other concerns relating to conditions of care or supervision within the Department," meaning that Mr. Howard's concern about his legal papers was a grievable issue. *Id.*, ¶ 17; dkt. 20-2 at 3.

On September 11, 2018, Mr. Howard submitted a grievance concerning the alleged confiscation of his legal documents. Dkt. 20-4 at 2. The grievance was received on September 12, 2018. *Id.* at 1. In the grievance, Mr. Howard alleged that on August 20, 2018, an officer claimed that Howard returned from court with additional envelopes, and his legal papers were subsequently confiscated. *Id.* at 2.

3

This grievance was rejected and returned as untimely because the Offender Grievance Process requires that the form be submitted within ten (10) business days from the date of the incident. Dkt. 20-4 at 1; dkt. 20-2 at 9. The grievance was also rejected and returned because there was no indication that Mr. Howard had attempted to resolve his dispute informally with staff before submitting his grievance. Dkt. 20-4 at 1; dkt. 20-2 at 8-9. The Return of Grievance form stated that Mr. Howard had "not shown any good reason for the delay" and also informed him that "[i]f you have tried to resolve [your issue] informally, please fill out the grievance form to indicate that." Dkt. 20-4 at 1.

Although an offender is required to submit a formal grievance within the ten (10) day time period, if an offender requires additional time to submit a grievance, the Offender Grievance Process provides that he may show good cause and submit the reason for delay in writing to the Grievance Specialist for review. Dkt. 20-2 at 13.

Mr. Howard sent an email on September 10, 2018, the date before he submitted his grievance, to "Information Services" complaining that when he returned from court, his legal papers were taken and he needed them back because he was a *pro se* defendant in a criminal trial set for October 25, 2018. Dkt. 23-1 at 1. On September 11, 2018, the same day he filed his grievance, he sent emails to "Confidential Services" and to "PREA Services" also asking that his legal papers be returned to him as soon as possible. *Id.* at 2-3.

### B. Analysis

Mr. Howard argues that the grievance process was not available to him. *See Ross v. Blake,* 136 S. Ct. 1850, 1856 (2016) ("A prisoner need not exhaust remedies if they are not 'available.'"). He contends that his grievance was improperly rejected because he had, in fact, attempted to resolve his complaint informally by sending three emails before he submitted his

grievance. He does not explain, however, why he did not respond to the rejected grievance as he was instructed to do on the Return of Grievance form, by filling out a grievance form and indicating that he had made informal attempts at resolution. Dkt. 20-4 at 1. There is no designated evidence showing that he responded to the Return of Grievance form as directed.

Mr. Howard further contends that he could not appeal an unprocessed grievance. He could have, however, cured the deficiencies in his grievance and responded, which would have continued the process. There is no designated evidence showing that Mr. Howard requested an extension of time to submit his grievance nor did he explain the reason for the delay in response to the Return of Grievance. By doing nothing, he failed to complete the three steps of the Offender Grievance Process.

Mr. Howard asserts that after he received the Return of Grievance form, on September 14, 2018, he sent an email to the Ombudsman asking about his legal papers. Dkt. 23-1 at 6. The Ombudsman investigated the matter and determined that the facility "has been unable to locate" Mr. Howard's legal papers. *Id.* at 7. Contacting the Ombudsman rather than responding to the grievance rejection, however, is not part of the Offender Grievance Process.

"To exhaust available remedies, a prisoner must comply strictly with the prison's administrative rules by filing grievances and appeals as the rules dictate." *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006) (footnote omitted); *see also Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006) ("'To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time,

5

the prison's administrative rules require.'") (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)).

The undisputed record demonstrates that there was a grievance procedure in place of which Mr. Howard was aware, but that he failed to timely complete the process before bringing his claims in this action. The consequence of Mr. Howard's failure to exhaust his administrative remedies, in light of 42 U.S.C. § 1997e(a), is that his claims against the defendants must be dismissed without prejudice. *See Ford v. Johnson,* 362 F.3d 395, 401 (7th Cir. 2004) (holding that "*all* dismissals under § 1997e(a) should be without prejudice.").

### IV. Conclusion

For the reasons explained above, the defendants' motion for summary judgment dkt. [20], is **granted.** Mr. Howard's motion for access to the law library, filed on March 1, 2021, dkt. [29], is **denied as moot.**

Final judgment consistent with this Entry shall now issue.

**SO ORDERED.**

Date: 4/8/2021

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

DAVID HOWARD
936576
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

All electronically registered counsel